JENKENS & GILCHRIST PARKER CHAPIN LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 704-6000

Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CENTURY PACIFIC, INC., et al.,

        Plaintiffs,

-against-

HILTON HOTELS CORPORATION, et al.,

        Defendants.

DEFENDANTS' REPLY
MEMORANDUM OF LAW
IN SUPPORT OF
MOTION TO DISMISS
03 Civ. 8258 (SAS)

This Reply Memorandum of Law is respectfully submitted on behalf of defendants Hilton Hotels Corporation, Doubletree Corporation and Red Lion Hotels, Inc. in support of their motion to dismiss the Complaint of plaintiffs Century Pacific, Inc. and Becker Enterprises, Inc., and each count therein, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.

**I. The New York Franchise Sales Act Does Not Apply.**

    **A.**     **The Act Applies Only Where a Sale is Made in New York**

The plaintiffs assert that "Under New York law, a New York choice-of-law provision 'is sufficient, <u>without more</u>, for New York's Franchise Sales Act to be applied. . . ." [p. 8, Opposition Brief ("Opp."), underlining in original]. In the three cases they cite to support this claim, however, each contract was deemed to have been made in New York. The New York Franchise Sales Act (sometimes the "Act") applies where "an offer to buy is accepted in this state. . . ." N.Y. Gen.Bus.Law § 683 (1) (a). The Agreements, here, were not made in New York and the Act, therefore, does not apply.

1

*Schwartz v. Pillsbury, Inc.,* 969 F.2d 840, 847 (9th Cir. 1992), is cited by the plaintiffs for the proposition that the Act applied due to a New York choice-of-law provision [Opp., p. 8]. The Ninth Circuit's analysis, however, is based on another provision in the agreement:

> The parties agree that no part of their transaction occurred in New York. . . . [I]t would appear that the New York Franchise Sales Act has no application to this case. But there is more. The franchise agreement provides: It is mutually understood and agreed that this Franchise *shall be deemed to have been made in the State of New York*. . . .

(Emphasis in original).

Because the parties had "deemed" their agreement to have been made in New York, the Act applied. In *McGowan v. Pillsbury*, 723 F.Supp. 530, 536 (W.D. Wash. 1989), the franchise agreement also provided that "the franchise shall be deemed to have been made in the State of New York." The court, therefore, gave "effect to the intent of the parties," considered "the franchise to have been made in New York," and allowed the plaintiffs to pursue a claim under the Act. *Id.* at 537.

The choice-of-law provision in the third case relied upon by the plaintiffs, *Mon-Shore Management, Inc. v. Family Media, Inc.*, 584 F.Supp. 186, 193 (S.D.N.Y. 1984), provided:

> This agreement shall be deemed made in the State of New York and all rights and obligations of the parties hereunder shall be governed as to validity, construction, and in all other respects by the law of New York.[1]

*Mon-Shore,* 584 F.Supp. at 193. The court in *Mon-Shore* did *not* say that *any* New York choice-of-law provision was sufficient, without more, to invoke coverage of the Act, as the plaintiffs contend. [Opp., p. 8]. The court said: "*This provision is sufficient,* without more. . . ." *Id.,* emphasis added. After noting that New York honors contractual choice-of-law provisions, the *Mon-Shore* court reached the following conclusion:

> *Absent a choice of law clause* we believe a New York court would apply New York law in light of the clearly expressed intention of the New York Legislature to exert its fullest power over franchises *offered or accepted within its police jurisdiction.*

---

[1] The court in *Schwartz* noted the "nearly identical language in the choice of law provision" in *Mon-Shore. Schwartz,* 969 F.2d at 847.

*Id.* (emphasis added).  The Act applied because it "purports to govern franchise offers made to out-of-state franchisees in circumstances where, *as in this case*, an offer to sell originates, is extended, or is accepted in New York. . . ."  *Id.* at 189 (emphasis added) (citing § 631(12) (a)).

In *Schattner-Rosen Construction Co. v. Union Carbide Marble Care, Inc.*, Bus. Franchise Guide (CCH) ¶ 11,283 (N.Y. Sup. Ct., N.Y. Co. 1997), the contract contained a New York choice of law provision, but did not contain a provision stating that the contract was deemed to have been made in New York.  Claims under the Act were, therefore, dismissed because "there are no allegations that would bring the offer of sale of the franchises at issue in this litigation into New York. . . ."  As in the case at bar, the contract did not state that it had been "made" or "accepted" in New York; the mere presence of a New York choice of law clause was insufficient to invoke the Act.[2]

Here, two corporations based in Colorado signed franchise agreements with a franchisor based in California.  The Complaint does not allege that an offer had been made or accepted in New York and the Agreement does *not* say that it is "deemed made in the State of New York"—the contract provision included in all of the cases cited by the plaintiffs.  Because there was no offer or sale in New York, the Act does not apply.

**B.     The Carve Out Further Bars Any Claims Under The New York Act**

The carve out in the choice-of-law provision further exempts "any franchise. . . law of the State of New York . . . which would not otherwise apply. . . ."  [Agreement, ¶ 16 (b)].  The New York Franchise Sales Act would not "otherwise apply" here because no aspect of the franchise transaction occurred in New York.  The Act, therefore, does not apply on its own terms and is specifically excluded by the parties' choice-of-law agreement.  Because the Act would not "otherwise apply," there is no New York public policy that requires application of the Act to a transaction between a California franchisor and two Colorado franchisees.  Nor can broad disclosure statements in the UFOC change the actual contractual

---

[2] *See also Maltz v. Union Carbide Chemicals & Plastics Co., Inc.,* 992 F.Supp. 286, 296 (S.D.N.Y. 1998) (applying California and Massachusetts franchise laws but not New York Act, in spite of New York choice-of-law provision); *Valley Juice Ltd., Inc. v. Evian Waters of France, Inc.,* 87 F.3d 604 (2d Cir. 1996) (applying Massachusetts franchise statute to franchise relationship, despite New York choice-of-law); *Rosenberg v. Pillsbury Co.,* 718 F.Supp. 1146, 1157 (S.D.N.Y. 1989) (New York Act not applied to franchise claim, without comment, despite New York choice-of-law).

choice-of-law provision in the franchise agreement which is included in full in the UFOC document. [UFOC, D-28].[3]

## II. Plaintiffs Have Not Established A Fraud Claim

### A. Express Contract Terms Bar Reliance On Purported Misrepresentations

The plaintiffs claim that integration clauses bar only representations that were specifically referenced in the agreement. Here, the parties agreed that *all* of the terms of their agreement were in writing and that neither would rely on *any* extraneous representations or promises. [¶ 16, Agreement]. They also agreed to an unrestricted right to transfer the franchise. These express terms contradict the purported oral representations in the Complaint in a meaningful fashion and are sufficient to bar the misrepresentation claims under New York law.

There need not be "precise identity between the misrepresentation and the particular disclaimer." *Grumman Allied Industries, Inc. v. Rohr Industries, Inc.,* 748 F.2d 729, 735 (2d Cir. 1984). Rather, the "*Danann*[4] rule operates where the substance of the disclaimer provisions tracks the substance of the alleged misrepresentations, notwithstanding semantical discrepancies." *Id.* In *Grumman*, a provision stating that "neither party is relying upon warranties or representations of the other not fully set forth herein," coupled with a substantive provision setting forth all of the representations of the parties, was sufficient to bar claims of extra-contractual representations.

Fraud and misrepresentation claims are barred, not just in "cases involving specific disclaimers, but also "in any instance where an express provision in a written contract contradicts a prior alleged oral representation in a meaningful fashion." *Clanton v. Vagianelis,* 187 A.D.2d 45, 48, 592 N.Y.S.2d 139, 140-141 (3d Dep't 1993) (because "the conflict between the provisions of the written contract and the oral representations negates the claim of reliance upon the latter."). *See also Bango v. Naughton,* 184 A.D.2d 961, 963, 584 N.Y.S.2d 942, 943-44 (3d Dep't 1992) (dismissing fraud claims where express contract terms contradicted purported oral representations "in a meaningful fashion"); *Cohan v. Sicular*, 214

---

[3] Plaintiffs argue that the carve-out language in Section 16(b) is ambiguous. With regard to the New York franchise statute in particular, plaintiff's ambiguity argument is frivolous, in that the carve-out provision makes specific and express reference to that law.

[4] *Danann Realty Corp. v. Harris,* 5 N.Y.2d 317 (1959).

A.D.2d 637, 625 N.Y.S.2d 278 (2d Dep't 1995) (integration clause that provided that "neither party [is] relying upon any statement made by anyone else that is not set forth in this contract," though not specifically naming the misrepresented issues of property taxes and utility charges, was sufficient to bar fraud claim); *Bibeault v. Advanced Health Corp.* 2002 WL 24305, at *4 (S.D.N.Y. 2002) (non-specific disclaimer still barred parol evidence because "the language of the provisions combined with the surrounding circumstances sufficiently alerted the signatory of their intended effect").

Here, the plaintiffs' claims are based on alleged misrepresentations that: "Red Lion was, and was intended to remain, a member of the Hilton family and, therefore, the franchisees would receive the following benefits. . . ." [Opp., p. 5]; that defendants' "plan for Red Lion was long term" [*Id.*], that the plaintiffs would obtain "increased bookings from being a member of the prestigious Hilton family. . . ." [*Id.*, p. 6].

In addition to a general integration clause disavowing reliance upon *"any representations"* [Agreement, ¶ 16 (d), emphasis added], the Agreement here expressly reserves an absolute right to transfer and states that Hilton-related services might then terminate. [*Id.*, ¶ 11]. This provision contradicts the purported oral misrepresentations in "a meaningful fashion." The purported representation that Hilton's "plan for Red Lion was long term" [*Id.*, p. 5] contradicts the express right to transfer at any time under Paragraph 11. The purported representation that the plaintiffs "would receive" certain Hilton-related benefits for a "long time" is contradicted by the express contract provision that states they could lose the right to Hilton-related benefits at *any* time. The integration clause here, coupled with ¶ 11 of the Agreement, therefore bars the plaintiffs' misrepresentation claims under New York law.

### B. The Purported Representations Were Non-Actionable Puffing

The plaintiffs rely upon purported representations that "Red Lion was an integral and growing part of the Hilton family" [Opp., p. 5], that Red Lion "was an important part of the Hilton family" [*Id.*], and that Hilton intended to "grow" the Red Lion brand [*Id.*, p. 6]. These purported statements are non-actionable "trade talk" or puffing.

### III. The Plaintiffs Have Not Pleaded A Proper Claim For Negligent Misrepresentation

#### A. There Is No Special Relationship of Trust or Confidence

"New York courts do not recognize a cause of action for negligent misrepresentation in the absence of some special relationship of trust or confidence between the parties." *Accusystems, Inc. v. Honeywell Information Systems, Inc.,* 580 F.Supp. 474 480 (S.D.N.Y. 1984). *See also Anglo-Iberia Underwriting Management Co. v. Lodderhose,* 224 F.Supp.2d 679, 688 (S.D.N.Y. 2002) ("liability for negligent misrepresentation has been imposed only on those persons. . . who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified."). "Such a special relationship of trust generally does not exist between sophisticated commercial entities entering into arms-length business transactions." *DynCorp v. GTE Corp.,* 215 F.Supp.2d 308, 329 (S.D.N.Y. 2002).

The plaintiffs concede there is no fiduciary relationship between the parties [Opp., p. 20, fn. 4], but claim that a special relationship of trust and confidence existed because the defendants were "in sole possession of critical information." [Opp., p. 19]. Even a special relationship of trust and confidence, however, must be "akin to a fiduciary relationship." *In re Chateaugay Corp*., 155 B.R. 636, 652 (Bankr. S.D.N.Y. 1993). The fact that parties in commercial relationships necessarily possess superior knowledge about their own intentions cannot take the place of a fiduciary relationship, or all commercial relationships would become "special" relationships.

The cases cited by the plaintiffs are inapposite, because they were cases where affirmative representations were made about third parties, with the intent that they be relied upon. *New York Islanders Hockey Club, LLP v. Comerica Bank--Texas*, 71 F.Supp.2d 108 (E.D.N.Y. 1999) (Texas bank falsely advised that a particular individual had a "net worth in excess of more than $100,000,000.00"); *Suez Equity Investors, L.P. v. Toronto-Dominion Bank,* 250 F.3d 87, 103 (2d Cir. 2001) ("extensive due diligence" had uncovered "only positive information on" a particular individual).

The plaintiff must also show that "the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Crigger v. Fahnestock and Co., Inc.*, 2003 WL 22170607,

at *10 (S.D.N.Y.).  "Special" relationships exist only where both parties intended there to be reliance on information provided.  *See Brown v. Stinson*, 821 F.Supp. 910, 915 (S.D.N.Y. 1993) (special relationship where "reliance was anticipated by both parties").  Here, the contract terms establish that the transfer of ownership was not material to the parties and that the plaintiffs were not relying upon any oral representations not contained in their contracts.  *See O'Neal v. Burger Chef Systems,* 860 F.2d 1341, 1352 (6th Cir. 1988) (where *sale* of franchise system was allowed under contract, "we fail to see how any *plans* to sell the system in the future, as opposed to the actual sale, could possibly constitute a material fact affecting the essence of the subject matter of the contract. . . .")  (emphasis in original).

      **B.**    **The Alleged Misrepresentations Are Not Based On Present Conduct**

The plaintiffs claim the representations they attribute to the defendants were not based on future conduct  [Opp., 21], but their allegations are all about future conduct.  E.g., "Red Lion was, and *was intended to remain*, a member of the Hilton family and, therefore the franchisees *would receive* the following benefits. . . ." [Opp., p. 5]; "Red Lion *would have* 200 franchises within five years" [*Id.*]; the plan for "Red Lion was long term" [*Id.*]; the intent was to "own it and grow it."  [*Id.*].  [Emphasis added].  These are "mere expressions of future expectation" and cannot support a negligent misrepresentation claim.  *Bango v. Naughton*, 184 A.D.2d 961, 963, 584 N.Y.S.2d 942, 944 (3d Dep't 1992).

The only representation that could be actionable as a statement of material existing fact under New York law is the purported statement that there was no present intent to sell Red Lion.  This purported misrepresentation is not actionable for other reasons—it conflicts with express contract terms in a meaningful fashion and, therefore, could not have been material.

      **C.**    **Purported Misrepresentations That Contradict the Agreement Cannot Support a Negligent Misrepresentation Claim**

A negligent misrepresentation claim cannot be based upon purported representations that contradict the parties' agreement.  *Prestige Foods, Inc. v. Whale Securities Co., L.P.*, 243 A.D.2d 281, 663 N.Y.S.2d 14 (1st Dep't 1997); *Sheth v. New York Life Ins. Co.*, 273 A.D.2d 72, 73, 709 N.Y.S.2d 74, 75 (1st Dep't 2000).

      **D.**    **Reliance Must Be Reasonable to Support a Negligent Misrepresentation Claim**

"On the pivotal point of reliance. . . a plaintiff must prove reasonable reliance. . . ." *King v. Crossland Sav. Bank*, 111 F.3d 251, 258 (2d. Cir. 1997), interpreting New York law. *See also Consolidated Edison, Inc. v. Northeast Utilities*, 249 F.Supp.2d 387, 409 (S.D.N.Y. 2003) (". . . it is unnecessary to reach the question of whether a special relationship existed. . . because Con Edison cannot prove the essential element of reasonable reliance in the face of the express contract provisions. . . ."). Here, the plaintiffs cannot establish that they could have reasonably relied upon purported oral representations that contradicted contract provisions. It makes no sense for the parties to have devoted four pages of their Agreement to a detailed analysis of the *plaintiffs'* right to transfer, but then to have omitted material terms modifying the *defendants'* unfettered right to transfer.

### IV. The Fraudulent Omission Claim Fails

#### A. Franchisors Are Not Obligated to Disclose the Possible Sale to Franchisees

The plaintiffs dismiss the decisions of the Sixth and Seventh Circuits holding that franchisors were not obligated to disclose pending sales as cases from "other jurisdictions." [Opp., 17]. They cite no case from this or any other jurisdiction rejecting the logic of these cases or the other district cases directly on point. They rely only upon the truism that Hilton necessarily had superior knowledge as to its own plans in order to create a duty to disclose. The same circumstances were before the Circuits in *O'Neal* and *Vaughn v. General Foods Corp.*, 797 F.2d 1403 (7th Cir. 1986), but both courts found no duty to disclose plans to sell a franchise system.

Pre-contract disclosures are closely regulated in franchising. The plaintiffs do not contradict the moving papers on the point that the FTC Rule—which applies to the sale of franchises from California to Colorado—does not require disclosure as to the possible or even probable sale of the franchisor. If "superior knowledge" were all it took to create an affirmative disclosure obligation, *all* possible sales would have to be disclosed, because *all* companies necessarily know more about themselves than parties contracting with them. *See, for example, Stewart v. Jackson & Nash*, 976 F.2d 86, 90 (2d Cir. 1992) (dismissing negligent representation claims against law firm as to its plans for a newly hired attorney, without mentioning "superior knowledge," even though the law firm certainly had "superior knowledge" about its own plans).

### B. The Agreement Precludes Claims that the Sale of Red Lion Was Material

Superior knowledge creates an affirmative duty to speak only where "the defendant knew that the plaintiff was acting under a mistaken belief with respect to a material fact." *Frigitemp Corp. v. Financial Dynamics Fund, Inc.,* 524 F.2d 275, 283 (2d Cir. 1975). *See also Canpartners Investments IV, LLC v. Alliance Gaming Corp.*, 981 F.Supp. 820, 826 (S.D.N.Y. 1997) ("Superior knowledge" triggers a duty to disclose only where "it was reasonable for the non-disclosing party to presume that the other party would act differently if it were fully informed."); *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*, 731 F.2d 112 (2d Cir. 1984) (no duty to disclose where defendants had no reason to know that information was of material interest to the plaintiff).

Given the express contractual terms in the case at bar---providing for an unfettered right to transfer and disclosing the loss of Hilton-related services that would go with it---it would not have been reasonable for any of the defendants to presume that corporate plans as to the transfer of Red Lion would be material. *See O'Neal, supra* (if system could be sold, *plans* to sell the system could not be material).

The defendants here could not have known that the plaintiffs were acting under the mistaken belief that they had been orally promised that Hilton would not sell Red Lion, because the Agreement contradicts that assertion. The plaintiffs agreed that they were not relying upon any representation that was not included in the Agreement, itself, and acknowledged their understanding that Hilton *could* sell Red Lion at any time, and the sale would mean the loss of services affiliated with Hilton.

### V. Conclusion

The plaintiffs, a Nevada and a Texas corporation both based in Colorado, have sued a Delaware corporation under the New York Franchise Sales Act on the strength of a choice-of-law provision that expressly exempts any franchise statutes. The Act and case law interpreting it are uniform in holding that a sale must be made or accepted in New York for the Act to apply. Choice-of-law provisions were sufficient to invoke the Act only when the contract was "deemed accepted" in New York.

Although the plaintiffs acknowledged in writing that Hilton had an unfettered right to sell the Red Lion system and that they might then lose Hilton-affiliated services, they have attempted to gain by pleading what they could not obtain in contract negotiations---the right to force Hilton to remain the

owner of Red Lion for the "long term." The contracts are arms' length commercial contracts with corporations who own and operate hotels. There is no fiduciary or special relationship to support a negligent misrepresentation claim.

Substantial case law states that franchisors have no duty to disclose their business plans to franchisees. *Plans* to sell the franchisor could not have been material if the actual *sale* of the franchisor was not. The representations cited in the Complaint are either puffing or statements about future conduct—neither are actionable.

All that has happened here is that a party to a contract exercised an expressly reserved contract right. That should not give rise to any viable cause of action.

WHEREFORE, it is respectfully submitted that the Complaint should be dismissed without leave to amend.

Respectfully submitted,

JENKENS & GILCHRIST
PARKER CHAPIN, LLP


_____/s/ Lee Stremba_____
Lee Stremba  (LS 0117)

Attorneys for Defendants

<u>Of Counsel</u>:

Jenkens & Gilchrist, P.C.
Jonathan Solish
Glenn J. Plattner

February 2004